And we'll hear Martinez v. Capra. May it please the court, Brian Pollavoy for George Martinez. When George Martinez... I can't quite hear because the door is open. If you could wait just one second, please. Okay, thanks. When George Martinez was called upon in the state court to make the decision as to whether or not to accept the plea offer that was offered to him, he did not receive effective assistance of counsel. And for that reason, the district court here should have granted a writ of habeas corpus. The record establishes three points. First, Mr. Martinez had no defense if he were to go to trial. And his trial counsel, Mr. Servini, knew full well before the trial started that Mr. Martinez had no defense. Second, Mr. Servini knew that Mr. Martinez failed to appreciate that he had no defense. And Servini also knew that Mr. Martinez at all times thought he in fact did have a defense. But the third point, and it's the extraordinary point here, is that at the hearing in the state court, after he was convicted at the section 440 hearing, trial counsel acknowledged that second fact. He acknowledged that Mr. Martinez at all relevant times believed that he could not be convicted of burglary if he had not set foot in the apartment that was burglarized. But supposing no matter what you said, he still would not have believed it. I mean, how far do you have to go to make him actually believe it in order to be effective? Well, you ultimately could have a competency issue, and I'm not suggesting that is raised here. But what makes this case different is this is not a he said, she said case where he says I didn't believe it, where the lawyer says I told him and he knew it, and Mr. Martinez after the fact says, oh, no, I didn't understand that. This is one where the trial counsel at the hearing was questioned at length, and his, the question and answer, and if I can quote from just two pages in the record, page 136 to 137, as well as 167 to 168, trial counsel was asked, was it your understanding from Mr. Martinez that he thought he couldn't get convicted of burglary if he hadn't been inside the dwelling? Answer, yes, that is absolutely what he thought. Trial counsel goes on. Mr. Martinez, quote, told me consistently I was never inside the apartment. That's what he told me. And I followed up, and he felt that mattered? Answer, oh, yeah, he thought that mattered right. I think you left out the question, and did he tell you again prior to the trial that he understood he can't be convicted of burglary if he was never physically inside the apartment? And trial counsel said, no, he didn't tell me he couldn't get convicted of burglary. He said he told me consistently I was never inside the apartment. That's what he told me. Correct. And when we followed up, we asked if he had, in fact, he felt that mattered, and he felt that mattered, that he was never in the apartment. Yeah, he thought that mattered. Right, but trial counsel is saying that trial Mr. Servini is saying that he knew at the time that no matter what he was saying to his counsel, okay, we are accepting the state court's credibility determination. We are accepting the state court says I believe Mr. Servini when he says he said X. Okay? Whatever Mr. Servini said to Mr. Martinez, whatever he said in totality, Mr. Servini also says that whatever I was saying, Mr. Martinez didn't get it. Now, the question is this court in Purdy and Carrion and looking at Rule 1.4 of the New York Rules of Professional Conduct has said you have to look to the defendant's comprehension. You have to look. It's not simply enough to say here's the law. Now make your decision. Mr. Martinez had a ninth-grade education. Okay? Whatever was said to him, this is one where Mr. Servini says I am telling you when the time came for him to make that decision, he didn't appreciate what I was saying. It appears that no matter what anybody tells him, he's not going to listen to what a lawyer says. I mean, there was the legal aid lawyer, Ms. Burton, and she told him before the grand jury, you're making a mistake if you testify in the grand jury, that you didn't actually enter the apartment, but you participated in it. And he said, well, apparently he said I don't care. He testified before the grand jury, and that's when he got indicted. So, I mean, how much of an education do you need in order to understand when your defense fails? To be effective, to be effective assistants of counsel, to take into account the comprehension and the ability of your client, it would be one thing if Mr. Servini says, Martinez said he understood what I was saying, but he still wanted to go to trial. But that's not what Mr. Servini testified under oath. He said he didn't understand at the time that it took, the time that he was called upon to make the decision as to whether or not to go to trial, he didn't understand. And, in fact, I asked him, maybe I rolled the dice too much. I said, in fact, at all times up through sentencing in this case, that was his understanding. And he said, I don't know what his understanding was, but those were his words. He felt he wasn't guilty of burglary because he was never in the apartment, and, okay, that's a reasonable layman's assumption. His lawyer is saying that this man with a ninth grade education had a reasonable layman's assumption that if you don't go into the premises, if you stand outside, you're not guilty of burglary. We all know that's wrong, but what the lawyer is saying is that that is what his client understood. And what does it take, Your Honor? It took me an hour sitting in prison upstate to explain it and get through until my client said, I got it, okay. It's not about what he said. You had the advantage that he'd already been convicted. So he could well appreciate the fact that he could be convicted, notwithstanding that he didn't enter the apartment. Your Honor. Effectiveness, you're saying effectiveness depends upon the client understanding the advice, whereas effectiveness may be satisfied by giving the right advice repeatedly and then going forward with whatever your client wants you to do. Respectfully, Your Honor, no. If the client says, I don't understand it. What this court said in Purdy and Carrion, quoting the rules, the lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation. There is actually not a finding by the State court as to whether he actually told Mr. Martinez, you can be convicted of burglary even if you never set foot in the apartment. There is not a finding. There is a conclusory finding that he gave good advice, but there is not a finding by the State court that he gave that advice. May I continue? Yes, sir. But you have to – we have to take into account the reasonable layman's assumption to take into account that he is saying both the judge and the State court judge and the trial lawyer said he is adamant in his belief. If he does not understand it, if the lawyer ultimately, to get to your question, ultimately if the person doesn't understand it, notwithstanding trying repeatedly to convey something, you have a competency issue. And that would – Can I ask a quick question about the record? How much time did Mr. Martinez have to consider the plea? I understand that both Mr. Cervini and the trial judge told him to take the plea and it suggested that he had long enough to think about that he was able to call his wife to discuss it. Do you have a sense of how much time he had? Because he could get input from other people as well. He clearly was resistant to the notion that he was vulnerable and he expressed a view that he wanted to go to trial. So I want to have a little bit of that sense. He believed – correct. It was the day of trial or the day before the eve of trial. He believed – his reasonable layman's assumption in the words of his lawyers was that he could not be convicted of burglary. He could be convicted of possessing stolen property, but he could not be convicted of burglary because he was never in the apartment. His lawyer, Cervini, testified that even though he received the plea offer from the state in January of 2007, Cervini says, I never recommended a plea to him until Justice Massaro was sitting there as the jury was going to be – as we were going to pick a jury. And at that point, the state justice said, you really should be looking at this. And at that point, with a five-and-a-half to 11-year plea, Mr. Cervini recommended to our client to take it. And there is no dispute that on that day, with a jury about to be picked, he recommended it. And our client said no. Our client testified. He had been told for months and months. He understood from Cervini that since he wasn't in the apartment, he couldn't be convicted of burglary. But – You say he understood from Cervini. He just didn't accept what Mr. Cervini was saying to the contrary. No, there's no evidence that Cervini actually said to the contrary. We believe, Your Honor – Because the legal aid lawyer had said it initially. No, the legal aid lawyer, Ms. Burton, was appointed very briefly. She talked to him before he was indicted. They make a big – the state court made a finding as to Ms. Burton that she told him, quote, this is page 295 of the record, Burton had informed the defendant that he could be convicted of burglary even if he never personally entered the burglarized premises. And the court there cites page 227 of the transcript. When you look at the actual question, that is not the question that was asked. The question makes no sense. And the question was, did Ms. Burton tell you that you could be indicted, and if you were convicted, even if you never stepped foot inside the apartment? Answer, she said something like that. Question, what do you mean something? Answer, she was trying to stop me from going upstairs. There is no support in the record. And again, this is not a he said, she said. There is no support in the record for the state court judge's statement as to what Burton informed him. But as to what Cervini said, and again, I close simply by saying, no matter what he said, he has acknowledged, Mr. Cervini acknowledged, that it was a reasonable layman's assumption that you are not guilty of burglary if you didn't set foot in the premises, and that no matter what Cervini said, and there's not a finding as to precisely what he said, but when he was sitting at the table saying to George, you should take this plea, otherwise you'll face the rest of your life in jail, he did not, Mr. Martinez could not make an informed decision on that because he didn't, Cervini says, he didn't appreciate what I was saying. And the law has to be that it's not simply what you say. If I say to a client, the law is X, Y, and Z, and I'm crystal clear what is your determination, that is not effective assistance if I know for a fact, I know for a fact that my client doesn't understand what I've said. Thank you. Thank you. May it please the Court, Charles Wong for the respondent. Your Honor is here. After a factual hearing, the state court accepted Mr. Cervini's testimony and found it credible that as per his usual practice, he would have reviewed all the charges, including the burglary charge, which the petitioner was ultimately convicted of, and explained what evidence and what elements the people had to prove to establish his guilt, including the fact that under the acting in concert theory, even though he did not enter the apartment, he would still be liable and could be found as an accomplice under the burglary charge.  Mr. Cervini never went over any of the charges, and that he was never told that he could be found guilty as an accomplice, even if he did not enter the apartment. And to quickly address Maverick's comments regarding the plea offer, Mr. Cervini at the hearing mistakenly recalled that the plea offer was made immediately prior to the trial. He never stated that I was given the offer months before, and that he never advised Mr. Cervini, sorry, petitioner to accept it. He just mistakenly recalled as to when he had, when the plea offer was given to him by the prosecution. According to the prosecutor, the plea offer was made in January, and it was... Can we get away from what, according to this one and according, what are the findings of the state court? That's what we have to give deference to. I'm sure there's testimony on every side of everything, but our standard of review is pretty tight here. Yeah, sure. There's no, petitioner fails to present any clear encompassing evidence to rebut the state court's finding that Mr. Cervini provided proper advice and told petitioner that he was liable to be found guilty as an accomplice, even if he did not enter the apartment. Mr. Pavlo's point is, as I understand it, is that whether you have a finding or not that the proper advice was given, there's no finding that the defendant understood it. I believe the state court did find that he... Well, is there a finding that he understood this and proceeded anyway to reject the plea?  Because the state court found that both Mr. Cervini and his first attorney, Ms. Boren, both advised him that he could be found guilty as an accomplice, and he still proceeded to trial where he was found guilty. I believe the state court found that he understood the offers. I'm sorry. Finish answering. No, go ahead. I was going to say, supposing the court found that the counsel did everything reasonable to inform him that he could be held responsible, but he still, at the end of the day, he didn't believe it. That is, the defendant didn't believe it. Is that enough? Do you win under those circumstances, or does it have to appear to the trial court that the defendant did in fact understand it rather than that he was told it many times? I think the fact that the counsel gave the proper advice is sufficient because whether to take the plea off or not is up to the petitioner's decision. Even if the petitioner basically refuses to accept the advice and decides he's going to trial, the counsel has to accept that decision. He cannot go against his client's decision and say, no, you'll be found guilty at trial and you'll be liable to a greater sentence, so you have to accept the plea offer and basically just ignore his client's wishes to go to trial. The issue here really is that . . . I'm saying, just a fraction of an inch away from that, I'm saying not only did he decide of his own free will to go to trial, he did so because he did not understand the advice that his attorney was giving him. Even though the attorney gave it to him 20 times, he still didn't understand it. It's the fact that he never understood it enough for him to prevail on the notion that there was insufficient counseling. I think in that case it would really probably depend on what the counsel did if he really believed he did not understand. That is not the case here, but if he understood that he did not . . . if counsel really believed that his client didn't understand it, then counsel perhaps should at least let the court know that my client . . . I've given the proper advice, explained it in many different ways, but the client still refuses to accept it, and just let the court know and perhaps ask the court to explain it, and then it might be sufficient. Is there any dispute that counsel and the court advised Mr. Martinez to accept the plea offer before going to trial, and that he had time to consider that offer? No, Your Honor. It was actually on the record. When the trial ADA heard the counsel basically inform Petitioner that he should accept the plea offer, and also heard Petitioner tell . . . I'm sorry, Mr. Simonyi tell Petitioner he should take it, and the court is both advising you to take it, and the court basically said on the record, it is my understanding that you're not . . . you're rejecting the plea offer. You want to go to trial. And as noted, the offer was . . . Mr. Simonyi did not sit on the plea offer. He just mistakenly recalled the fact basically about three years later as to when the offer was initially made. According to the trial prosecutor, the offer was made approximately three months before, and considering the fact that Mr. Simonyi fought very hard to get a non-life offer, there's no reason to believe that he had ever advised Petitioner not to take it, especially considering the state courts basically did not credit Petitioner's testimony that Mr. Simonyi ever characterized it as a bad news, and that the offer was not acceptable. It is the case that the indictment said that Mr. Martinez was in the apartment. That's the only thing that he was charged with in the indictment, if you look at the recitation of the facts, correct? I don't believe the—I don't remember the exact wording of the indictment. You didn't ask about the exact wording. I said that the indictment pled only that he was in the apartment, correct? I don't believe it actually said he was in the apartment. I believe it basically just charged him with the burglary. I'm not sure if it stated he was in the apartment  But regardless as to whether the indictment would have stated that he was in the apartment or not, under state law he was liable as an accomplice, and Mr. Servini's usual practice was to explain all the charges and all the legal liability, and he stated that he would have told Petitioner that regardless of whether he was in the apartment or not, he was liable because he had assisted the perpetrator who actually entered the apartment to basically take the property out of the apartment and commit the burglary. But it is also the case, possibly you would allow, that he may have concluded that he could not be convicted because he did not do what the indictment said he did. I mean your episode says he has a ninth-grade education. Well, ninth-grade education allows you to read it. It says he was in the apartment. Why is it crazy for him to come to the conclusion that if he didn't do what the indictment said he did, he couldn't be convicted? Because Mr. Servini explained what the legal principles are, and he explained that he could be convicted. So even if the indictment might have stated he was in the apartment and he knew he wasn't, Mr. Servini's attorney told him it doesn't matter whether you were in the apartment, it doesn't matter what the indictment says, you could still be found guilty at trial, and he was even told that by Ms. Byrne, and in grandeur, he testified he never entered the apartment. The judge didn't tell him that though, is that correct? No, I don't believe the judge explained what the legal principles were. You just said earlier one of the things that an effective lawyer could do if his client persists in misunderstanding advice is to ask the judge to clarify the law, but he didn't. Well, Your Honor, there's no reason to believe Mr. Servini actually believed Petitioner misunderstood rather than refused to accept his legal advice and wanted to proceed to trial and reject the plea offer. Mr. Servini said, I explained it to him, and all he stated was Petitioner believed it mattered that he did not enter the apartment. He never actually stated that throughout the plea and throughout the whole trial, Petitioner never understood that he could not be convicted because he did not enter the apartment. Your Honor, you may have believed that the prosecution had dropped a stitch by not pleading that he aided and abetted. Well, Your Honor, under State law, the indictment does not have to actually state that. I understand that, but we're dealing with a layman. Well, here, Mr. Servini explained everything to him. He stated that he would explain, doesn't matter what the people had to prove, that it does not matter he entered the apartment, so he would explain it to him. It does not matter what the indictment stated. I understand. Yeah, okay. I have your argument. Thank you, Your Honor. To answer your question, Your Honor, the indictment states specifically and repeatedly that the grand jury of the County of the Bronx, by this indictment, accuses the defendant, George Martinez, of the crime of burglary in the secondary degree committed as follows. The defendant, George Martinez, owner about March 14, 2006, did knowingly and unlawfully enter in a dwelling of Clyde Noel with intent to commit a crime therein. When we move to the second count, the indictment uses the same language. It speaks only to what George Martinez entered a dwelling. It does not speak to Martin, the man who we believe actually did enter the dwelling. To answer your first question to my adversary as to what you correctly said, we have to look to what the state court found. The state court did not find that Mr. Servini made the various statements that counts. It did not state as a finding of fact two things. One, it did not state as a finding of fact that Mr. Servini told his client that he could be convicted of burglary, even if he had not set foot in the dwelling. At trial, at the 440 hearing, the people's lawyer at the time tried mightily on cross to say, but you told him, axing us. No, I'm not sure if I used those words. Instead, I told him, you know, he should take the plea because he could dance at his daughter's wedding or he's facing too much risk. There was no finding as to what he said. And most importantly, there was no finding by the state court judge that he understood it. That is the key point. And if that matters, and there's no finding, then what does our standard of review allow to go on in Federal court? Well, to the extent that the court did not make a factual finding that he understood it, that would be an unreasonable application of Strickland, right, as to effective assistance of counsel. If he, if the court is saying X was told, but I'm not asserting that the client understood it, it is not effective assistance in light of Purdy and Carrion to simply say, you said X to your client and that's effective, notwithstanding, and this is the rare case where the trial counsel acknowledges his client at the time did not understand it. And he acknowledged. Is it constitutionally required that the counsel to provide effective assistance has to confirm that his client understood in some profound sense the advice that has been given? No. No, I'm not saying he has to confirm it. And I'm not suggesting at all that that's the bright line test to say, I'm going to read you the law and you repeat it back to me to make sure you understand it. But this is a case. Repeating back wouldn't assure. Or that you in some way state. How do you affirm understanding in this profound sense? One could have a discussion where you talk to a colleague or what have you and you say something and in the discussion back you appreciate that they appreciate your point. This is the rare case where, and I'm not suggesting you have to have that colloquy back and forth. What I am suggesting is that in a case where the trial lawyer says, I know for a fact that he didn't understand me, and that is corroborated by what Mr. Martinez himself says at sentencing. He's saying, I wish Martin had come here and stood up and accepted responsibility for this. It is corroborated throughout the record. But we don't need to go further than having the trial lawyer himself say three places in the record, I knew for a fact that at the relevant time he didn't understand what I was saying. Whatever I was saying to this man with a ninth grade education didn't get through to him. You said earlier in your earlier argument that the state court judge sort of misquoted what Ms. Burton, I think it is, had told your client. But why should we not view that finding as a fair inference from a confused record? Let's accept that, okay? Let's accept that she said whatever she said. Just like I'm accepting for purposes of this appeal that Mr. Servini says, said, and said truthfully what the state court judge found. If I have to accept what he is saying Ms. Burton said and what Mr. Servini said, we still get to the point where in time you have Burton first, then Servini, right, and then taking the plea offer. It's at that time where regardless of what he has been told in the past, Mr. Servini is saying he does not appreciate and understand or take in what I am saying to him. The people below were saying, well, there was two things. There was Ms. Burton's supposed advice and the fact that in 1983, 23 years earlier, a charging document had said aiding and abetting. So George Martinez with a ninth grade education would have remembered 23 years earlier a charging document that had the words aiding and abetting. I mean, there is such a thing as a delusional client who has delusional optimism. It happens in the civil area all the time. But this isn't that. This is a reasonable layman's assumption. A reasonable layman's assumption that when you're told you committed burglary, that if you were the person who had the stolen goods and you're saying I did that, but you had the stolen, you didn't set foot in there and there's no evidence of that, everyone is acknowledged that's a reasonable layman's assumption you're not convicted of burglary. And regardless of what he read 23 years ago in a charging document or didn't, regardless of what Ms. Burton said to him in the hallway before he went stupidly to testify in front of the grand jury, and regardless of what Mr. Servini said when Justice Massar was saying you need to talk to your client and tell him to take the plea, we have the case here where the trial lawyer says he did not appreciate what I was saying. Would it have taken an extra hour to get it in? Or should he say at some point, Your Honor, he is not understanding what I am saying, either you need to talk to him because I can't provide, I can't allow him to make the informed decision that I'm required to under the professional rules and under this court and the state court precedent if he doesn't appreciate what I'm saying. And that is ineffective assistance of counsel. Thank you. Thank you both. Thank you. We'll reserve decision. That's the last case on calendar. Please adjourn the court.